## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **THEODORE LEON KHNANISHO,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:20-cv-265** |
| | § | |
| **CHIEF MARSHALL SCOTT ROUSH,** | § | |
| **LIEUTENANT TODD THURMOND,** | § | |
| **SERGEANT BRANDON VILLEGAS,** | § | |
| **CHIEF ANICETO PEREZ, CITY** | § | |
| **MANAGER MICHAEL BARRERA,** | § | |
| **CITY OF MATHIS, and CITY OF ALICE,** | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Theodore Leon Khnanisho (hereafter "Mr. Khnanisho"), complaining of Defendants from the City of Mathis, Texas: Chief of Police Marshall Scott Roush, Lieutenant Todd Thurmond, Sergeant Brandon Villegas, and City Manager Michael Barrera; Defendant from the City of Alice, Texas, Chief of Police Aniceto Perez**;** and Defendants the City of Mathis, Texas, and the City of Alice, Texas, hereby files Plaintiff's Original Complaint and Jury Demand and respectfully alleges the following:

### I.     NATURE AND SUMMARY OF THE ACTION

1.     Mr. Khnanisho brought this action under 42 U.S.C. Section 1983 for declaratory relief and damages arising under the Fourth and Fourteenth Amendments to the U. S. Constitution and under the laws of the State of Texas. Mr. Khnanisho was a former police officer of the Mathis Police Department. On May 29, 2019, he resigned from the department due to its unprofessionalism and returned the equipment issued to him when he was hired. On June 10,

2019, however, Mr. Khnanisho was unconstitutionally arrested and taken to jail for allegedly stealing the property belonging to the Mathis Police Department, an offense he did not commit; his residence was unlawfully entered and searched; his personal property, two bulletproof vests, inside the residence was unlawfully seized. Mr. Khnanisho's constitutional rights protected by the Fourth Amendment to be free from false arrest, unreasonable searches and seizures and by the Fourteenth Amendment not to have police deliberately fabricate evidence and use it to frame and bring false charges against him were violated by the police officers of both the Mathis Police Department and the Alice Police Department. The officers' actions resulted from a policy, practice, custom, and deliberate indifference on the part of the defendants, the City of Mathis, Texas, and the City of Alice, Texas. Mr. Khnanisho further suffered malicious criminal prosecution by the officers of the Mathis Police Department. The Mathis Chief Police personally participated in these unlawful actions to retaliate against Mr. Khnanisho because he wrongly believed that Mr. Khnanisho reported his possible affair with his newly hired secretary to the City Council. Additionally, Mr. Khnanisho suffered from defamatory statements made by the City Manager of Mathis with malice.

## II.      DEMAND FOR JURY TRIAL

2.      Plaintiff demands a trial by jury.

## III.      PARTIES

3.      Plaintiff Theodore Leon Khnanisho was a citizen and adult resident of Jim Wells County, Texas at all relevant times to this Complaint. He currently resides in Dallas County, TX.

4.      Defendant Chief of Police Marshall Scott Roush (hereafter "Chief Roush") is an individual citizen and adult resident of Texas. He is and was employed by the City of Mathis, Texas, first as a Sergeant and then the Chief of Police of the Mathis Police Department, at all

relevant times to this Complaint. He is sued in his individual and official capacities and may be served with Summons at his work address at the Mathis Police Department, 214 N Nueces Street, Mathis, TX 78368.

5.      Defendant Lieutenant Todd Thurmond (hereafter "Lieutenant Thurmond"), Badge #8102, is an individual citizen and adult resident of Texas, and was employed by the Mathis Police Department as a Basic Officer and then a Lieutenant at all relevant times to this Complaint. He is sued in his individual capacity and may be served with Summons at 11325 IH 37 Apt 2302, Corpus Christi, TX 78410.

6.      Defendant Sergeant Brandon Villegas (hereafter "Sergeant Villegas"), Badge #8104, is an individual citizen and adult resident of Texas. He is and was employed by the Mathis Police Department first as a Senior Officer and then a Sergeant at all relevant times to this Complaint. He is sued in his individual capacity and may be served with Summons at his work address at the Mathis Police Department, 214 N Nueces Street, Mathis, TX 78368.

7.      Defendant City Manager Michael Barrera (hereafter "City Manager Barrera") is an individual citizen and adult resident of Texas. He is and was employed by the City of Mathis, Texas, as the City Manager at all relevant times to this Complaint. He is sued in his individual capacity and may be served with Summons at his work address at the City Administration, 411 E San Patricio Avenue, Mathis, TX 78368.

8.      Defendant Chief of Police Aniceto Perez (hereafter "Chief Perez") is an individual citizen and adult resident of Texas and was employed by the City of Alice, Texas, as the Chief of Police of the Alice Police Department at all relevant times to this Complaint. He is sued in his individual and official capacities and may be served with Summons at 1112 Arcadia Drive, Alice, TX 78332.

9.      Defendant City of Mathis, Texas, is a political subdivision of the State of Texas, and owns, operates, manages, directs, and controls the Mathis Police Department, which employed Defendants Chief Roush, Lieutenant Thurmond and Sergeant Villegas at all relevant times to this Complaint. The City of Mathis, Texas, may be served with Summons by serving the City Secretary, Mary Acosta Gonzales, at the Office of the City Secretary, 411 E San Patricio Avenue, Mathis, TX 78368.

10.     Defendant City of Alice, Texas, is a political subdivision of the State of Texas, and owns, operates, manages, directs, and controls the Alice Police Department, which employed Defendant Chief Perez at all relevant times to this Complaint. The City of Alice, Texas, may be served with Summons by serving the City Clerk, Odilia Rodriquez, at 500 E Main St., PO Box 3229, Alice, TX 78333.

11.     At all times relevant to this Complaint, Defendants Chief Roush, Lieutenant Thurmond, Sergeant Villegas, and Chief Perez acted in concert and conspiracy, and were jointly and severally responsible for the constitutional harms caused to Plaintiff.

12.     At all times relevant to this Complaint, all defendant police officers acted under color of state law.

13.     At all times relevant to this Complaint and upon information and belief, Chief Roush is and was the policymaker on behalf of the City of Mathis, Texas, for the internal policies and procedures of the Mathis Police Department and the Mathis City Council was the policymaker for the City of Mathis, Texas.

14.     At all times relevant to this Complaint and upon information and belief, Chief Perez was the policymaker on behalf of the City of Alice, Texas, for the internal policies and procedures of

the Alice Police Department and the Alice City Council was the policymaker for the City of Alice, Texas.

## IV.   JURISDICTION

15.   Plaintiff brought this civil rights action under 42 U.S.C. §§ 1983 and 1988 to vindicate his constitutional rights protected by the Fourth and Fourteenth Amendments to the U.S. Constitution. This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343(a) (3) and (4).

16.   This Court has jurisdiction under 28 U.S.C. §§ 2201 and 2202 to declare the parties' rights and grant all further relief found necessary and proper.

17.   This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear the merits of Plaintiff's claims based on the laws of the State of Texas.

## V.   VENUE

18.   Venue is proper under 28 U.S.C. § 1391(b) because one or more Defendants reside in the Southern District of Texas.

19.   Venue is also proper under 28 U.S.C. § 1391(b) because all of the events or omissions giving rise to the claims occurred in the Southern District of Texas.

## VI.   FACTS

### Introduction

20.   Mr. Khnanisho had never been arrested for, charged with, or convicted of, any crime before being arrested for the theft charge he did not commit on June 10, 2019.

21.   Mr. Khnanisho has a college degree. He had three-year's experience as a police officer before the Mathis Police Department employed him from January 22, 2019 to May 29, 2019.

22.   The then-Chief of Police Pete Saenz for the Mathis Police Department hired Mr. Khnanisho. At the time, Chief Roush's title was a Sergeant with the Mathis Police Department

who served as Mr. Khnanisho's trainer for 30 days until he completed and passed the thirty-day training period. Subsequently, Mr. Khnanisho was assigned unaccompanied on his shifts to patrol the City of Mathis, detain and arrest individuals. Chief Roush never gave Mr. Khnanisho a "poor judgment" during his four-month employment with the Mathis Police Department.

23.     Chief Saenz resigned from the Mathis Police Department on March 28, 2019. He left the Mathis Police Department with the following officers: Captain Tom Carter, Lieutenant Rusty Graham, Sergeant Marshall Scott Roush, Senior Officer Brandon Villegas, Officer Todd Thurmond, Officer Theodore Khnanisho, and two other officers.

24.     After Chief Saenz resigned, in the mid of April, City Manager Barrera gave the Chief of Police position to Chief Roush—then-Sergeant Roush—who had worked for the Mathis Police Department about one year, and completely by-passed Captain Carter and Lieutenant Graham, who had each worked for the Mathis Police Department for over five years. City Manager Barrera and Chief Roush were very close friends.

25.     After being promoted, Chief Roush used the department budget to purchase new furniture for his office and hire a personal secretary.

26.     When he was first promoted, Chief Roush instructed Mr. Khnanisho to slow down making arrests. Chief Roush stated that he didn't want to look bad in the public eyes just yet until about a year down the road to earn his new income. Chief Roush ordered Mr. Khnanisho to just patrol around the city limits, but not arrest or pull anyone over. Captain Carter and Lieutenant Graham heard Chief Roush's instructions and told Mr. Khnanisho it was time for them to move to another police department.

27.      Lieutenant Thurmond was hired as a Basic Officer two months after Mr. Khnanisho was hired, but Chief Roush promoted Thurmond to a Lieutenant after he had been with the Mathis Police Department for about a month. Lieutenant Thurmond was close friends with Chief Roush.

28.      Shortly after becoming Chief of the Mathis Police Department, Chief Roush also promoted Senior Officer Brandon Villegas to Sergeant. Sergeant Villegas was close friends with Chief Roush.

29.      Chief Roush subsequently demoted Captain Carter to Lieutenant and Lieutenant Graham to Sergeant.

**The arrest that Mr. Khnanisho made on May 11, 2019**

30.      On May 11, 2019, Mr. Khnanisho was on patrol when dispatch notified him that a caller said her former brother-in-law (Ivan Hinojosa) broke into her sister's apartment even though he was not to be on the property or even near her sister's property. A few minutes later, Mr. Khnanisho arrived at the apartment, looked for and found Mr. Hinojosa inside the apartment. Mr. Khnanisho then arrested Mr. Hinojosa for trespassing, handcuffed him, and transported him to jail. Although Mr. Khnanisho used his taser as a flashlight to search the dark apartment, he did not tase Mr. Hinojosa.

31.      The next day, Mr. Hinojosa's mother filed a complaint stating that Mr. Khnanisho tased her son several times and physically abused him during the arrest the day before. Lieutenant Carter and Sergeant Graham then reviewed the video from Mr. Khnanisho's body camera video pursuant to Chief Roush's instructions. Both Carter and Graham reported to Chief Roush that Mr. Khnanisho did not do any of the things listed in the complaint and recommended that charges be filed against Mr. Hinojosa's mother for filing a false report. Chief Roush, however, instructed the two officers to write a letter stating that Mr. Khnanisho did tase Mr. Hinojosa.

When Chief Roush continued to demand that the officers change their report, Sergeant Graham resigned.

32.     Chief Roush then went to Lieutenant Carter's office and asked him to type a letter or report stating that Mr. Khnanisho had tased Mr. Hinojosa. Lieutenant Carter replied to Chief Roush that he could not type a fake letter. Chief Roush threatened Lieutenant Carter, "Either you write the way I am telling you to or I will fire you." Lieutenant Carter replied to Chief Roush again, "I could not write a false report whatsoever." Chief Roush then left Lieutenant Carter's office.

33.     Lieutenant Carter subsequently notified Mr. Khnanisho that Chief Roush requested Carter to write a false letter/report. Mr. Khnanisho then called the Combined Law Enforcement Associates of Texas (CLEAT) Staff Attorney Celeste Robinson (hereafter "Ms. Robinson") and advised her of the letter. She stated that she wondered why anyone would do such a thing, especially in law enforcement.

34.     After a few days, Mr. Khnanisho asked Chief Roush why he would want Lieutenant Carter to type a fake report. Chief Roush responded that it would not be in Mr. Khnanisho's file, but he "just need[ed] it to show Ivan [Mr. Hinojosa]'s mother that we care." So, Mr. Khnanisho asked Chief Roush, "Why don't you then type it?" Chief Roush didn't reply but just walked out of the office and drove off in his vehicle.

35.     After a few more days, Chief Roush began ignoring Lieutenant Carter and Mr. Khnanisho. Therefore, Mr. Khnanisho decided to look elsewhere for another job and resign from such an unprofessional department.

36.     On Monday, May 27, 2019, Chief Roush moved Sergeant Villegas to the day shift and Mr. Khnanisho to the night shift so he would not have to see Mr. Khnanisho.

### The arrest that Mr. Khnanisho made on May 28, 2019

37.     Two weeks before May 28, 2019, Mr. Khnanisho was dispatched to a residence to respond to a 911 call reporting a stolen vehicle. After arriving at the residence, Mr. Khnanisho took the caller's personal information and vehicle information and returned to the department to file a stolen vehicle report. Having finished the report, Mr. Khnanisho sent a copy to Chief Roush.

38.     Dispatch subsequently contacted Mr. Khnanisho to inform him that the caller reporting the stolen vehicle had a warrant for unpaid child support in the amount of $10,000 and the warrant was ready to be picked up. Mr. Khnanisho walked to the dispatcher's desk and reviewed the warrant. Chief Roush walked up, advised Mr. Khnanisho that he [Roush] just deleted the stolen vehicle report and asked Mr. Khnanisho to forget about it.

39.     On May 28, 2019, while patrolling around the city limits of Mathis, Mr. Khnanisho passed the residence of the caller reporting the stolen vehicle. Mr. Khnanisho contacted dispatch to ask if the resident still had a valid warrant. When dispatch advised that the warrant was still valid, Mr. Khnanisho stopped his patrol car near the residence and informed dispatch of his location and his intent to tell the resident about the warrant. Mr. Khnanisho received the confirmation from dispatch.

40.     Mr. Khnanisho knocked on the front door. When the male suspect (hereafter "Suspect One") opened the door, Mr. Khnanisho stated that he had a warrant and asked Suspect One to step outside of the residence. Suspect One told Mr. Khnanisho he needed to grab a T-shirt first. As Mr. Khnanisho followed Suspect One inside and walked toward the bedroom, Mr. Khnanisho saw another male suspect (hereafter "Suspect Two") sitting along the bedroom's sidewall on a couch. Once Suspect Two noticed that Mr. Khnanisho was a police officer, he quickly charged at

Mr. Khnanisho. The two grabbed each other's arms and wrestled for a few minutes before Suspect Two ran out the front door.

41.     Mr. Khnanisho instructed Suspect One to quickly lie on the ground with his hands behind his back. Mr. Khnanisho arrested Suspect One without any altercation and escorted him to his patrol car where he seated Suspect One in the rear. Mr. Khnanisho contacted the dispatch and asked for additional backup from the San Patricio Sheriff's department.

42.     Two San Patricio Sheriff Patrol units arrived within a few minutes and Mr. Khnanisho detailed them about what happened. Mr. Khnanisho and the Sheriff Officers then circled the streets to look for Suspect Two, but they did not find him. They returned to the residence to search the inside where they found many stolen items, including computers, bicycles, tools, Methamphetamine, and drug accessories.

43.     While the officers were searching the residence, Suspect One fell asleep in the back of the patrol vehicle. One of the San Patricio Sheriff Deputies told Mr. Khnanisho that the Correctional Officer working that night at the jail would reject anyone who was not fully awake during booking. That same Deputy advised Mr. Khnanisho to contact Emergency Medical Services [EMS] to confirm nothing was wrong with Suspect One. Mr. Khnanisho contacted dispatch to send an EMS to evaluate Suspect One. EMS confirmed that Suspect One was normal and sleeping since he had been using Methamphetamine for several days. EMS then told Mr. Khnanisho they could not write an opinion letter to the Correctional Officer, but someone at the hospital could. The San Patricio Deputy advised Mr. Khnanisho the same: Transport Suspect One to the hospital [to be cleared] and then transport him straight to jail.

44.     Although Mr. Khnanisho tried contacting Sergeant Villegas several times to tell him the circumstances and ask what to do, Sergeant Villegas did not answer his phone as required. Mr.

Khnanisho then contacted Officer Luis Vela, the other night shift officer with the Mathis Police Department. Officer Vela told Mr. Khnanisho that he had previously encountered the same conditions as Mr. Khnanisho's. Officer Vela had to transport suspects under a warrant arrest to the jail, but as conditions warranted, had to have a doctor confirm that the suspect was normal before Officer Vela took the suspect to the jail to book in. Officer Vela had taken suspects to the hospital first and then released them at the jail without Correctional Officers' refusals. When Mr. Khnanisho told Officer Vela that Sergeant Villegas would not answer his calls, Officer Vela told Mr. Khnanisho, "Don't worry about it," and tell Sergeant Villegas to "call him" if he had any questions.

45.     Mr. Khnanisho contacted dispatch, advising that he was transporting Suspect One to the hospital to get him cleared and then taking him to jail. Dispatch acknowledged. Mr. Khnanisho subsequently ended up staying at the hospital with Suspect One for the remaining hours of his shift because he had to wait for nurses and doctors available to check Suspect One, MRI and X-Ray to be conducted for Suspect One by nurses, and the results to be evaluated by a doctor.

46.     Finally, a doctor advised that Suspect One was acting, lied, and was cleared to be taken to jail. Once he heard that from the doctor, Suspect One quickly opened his eyes and began pleading for his mistake for not paying child support. Mr. Khnanisho ignored him and transported him to jail.

47.     Having experienced a long and stressful night shift handling situations for which he had received no training and could not contact even a supervising officer for instructions, Mr. Khnanisho decided to resign from the Mathis Police Department.

**May 29, 2019**

48.     On May 29, 2019, Mr. Khnanisho went straight to the Mathis Police Department from the jail and arrived around 8:00 a.m. He walked inside, saw Lieutenant Thurmond sitting at his desk, and heard Lieutenant Carter walking in. Mr. Khnanisho told Lieutenant Carter that he was done working for Mathis [Police Department] and wanted to turn in things he had that day to Chief Roush.

49.     Mr. Khnanisho and Lieutenant Carter walked into Chief Roush's office, but he wasn't yet in the office. Mr. Khnanisho and Lieutenant Carter walked back to Lieutenant Thurmond's office. Lieutenant Carter said to Lieutenant Thurmond, "Teddy [Mr. Khnanisho] is going to turn in his gear to you because the Chief was not in yet." Lieutenant Carter continued, "Teddy is resigning and I will be a witness with this transaction."

50.     Mr. Khnanisho put a bulletproof vest, two keys, a taser, a body camera, and all the accessories parts they came with, on top of Lieutenant Thurmond's desk while he and Lieutenant Carter watched. Once Mr. Khnanisho finished, Lieutenant Thurmond returned, viewing his computer. Lieutenant Carter walked with Mr. Khnanisho out of the office and to the parking lot where Lieutenant Carter then asked Mr. Khnanisho to also help him find another department to work for.

51.     At the time he left, Mr. Khnanisho was wearing one pair of pants and one T-shirt that belonged to the Mathis Police Department. Mr. Khnanisho did not intend to deprive the Mathis Police Department of its ownership of the pants and T-shirt but was on his way home from a long night of work.

52.     Mr. Khnanisho was never asked to sign an itemized property list when he was hired by the Mathis Police Department and Mathis Police Department equipment and uniforms were

given to him. He never saw a property list and, to his knowledge, the Mathis Police Department did not require any other officers to sign for equipment, keys, or clothing. The two department keys, which later valued at $500 in the police report, were the ones that could be purchased easily from stores such as the Home Depot at reasonable prices for regular keys.

53.     About ten minutes after Mr. Khnanisho walked out of Lieutenant Thurmond's office and started driving home in his own vehicle, he received a call from Sergeant Villegas who immediately began yelling at him for taking Suspect One to the hospital and spending the remainder of his night shift at the hospital to get Suspect One medically cleared. Mr. Khnanisho explained that he tried to call Villegas several times, but since Villegas did not answer, he called Officer Vela. Mr. Khnanisho told Sergeant Villegas that Officer Vela advised what he had done in similar situations, but Sergeant Villegas responded that Vela was "nobody to follow instructions with."

54.     Continuing to argue with Mr. Khnanisho on the telephone, Sergeant Villegas told Mr. Khnanisho that he should have just kept trying to call him until he answered. Sergeant Villegas admonished Mr. Khnanisho that he should have just given the suspect a citation ticket and let him go. Mr. Khnanisho replied that there was no way to write a citation ticket for a person with an outstanding warrant.

55.     Mr. Khnanisho then told Sergeant Villegas, "I just quit working for Mathis. Stop calling me from now on." Sergeant Villegas hanged up on Mr. Khnanisho.

56.     When Mr. Khnanisho arrived at this apartment, he removed his Mathis uniform shirt and pants, placed them in his laundry basket, and showered. Then he contacted Ms. Robinson to tell her about what had just happened. Ms. Robinson told Mr. Khnanisho that to officially resign, he needed to send an email directly to Chief Roush.

13

57.    Around 3:00 p.m., Sergeant Villegas called Mr. Khnanisho at his apartment and told him that he wanted "to talk to [him] with Scott about the hospital incident." He said, "I want to make clear of who is the boss [*sic*] to make a decision." He told Mr. Khnanisho, "Vela is not your boss, and you are supposed to contact me. I need you to come to the police department in the evening at about 4:30 p.m. and we'll talk then." Mr. Khnanisho replied, "No, I am not coming back. I don't work for the department anymore. Stop calling me." Sergeant Villegas again hung up on Mr. Khnanisho. Sergeant Villegas did not inform Mr. Khnanisho that he was fired or terminated by the Mathis Police Department and did not ask Mr. Khnanisho to return all his issued gear or anything like that.

58.    After this telephone call, Mr. Khnanisho followed Ms. Robinson's instructions, sent Chief Roush an email at 05:22:50 p.m., and attached a letter that stated "Interim Scott Roush[,] I am officially submitting my resignation immediately as of today's date. I understand I am in good standings with Mathis Police Department and under no investigations and expect to receive an Honorable F5 form. Thank you, Theodore Khnanisho." Mr. Khnanisho copied the email to Ms. Robinson and Lieutenant Carter. Mr. Khnanisho then went to sleep because he had been up all night and most of the day.

59.    Later that same day, at about 6:40 p.m., while Mr. Khnanisho was asleep, Chief Roush, Sergeant Villegas and an officer from the Alice Police Department came to Mr. Khnanisho's second-floor apartment and began knocking on his door and yelling out his name. When he heard the commotion, Mr. Khnanisho woke up, went to the door, and through the door saw the three standing outside his door.

14

60.     Not understanding why the officers came to his apartment, Mr. Khnanisho called Ms. Robinson before he opened the door. She said that they probably came over after Chief Roush received Mr. Khnanisho's resignation email.

61.     Mr. Khnanisho asked Ms. Robinson to be a witness and then opened the door. Chief Roush specifically asked for Mr. Khnanisho's uniforms, radio and ID. Chief Roush did not ask Mr. Khnanisho for the items he already turned in to Lieutenant Thurmond in his office early that morning.

62.     Ms. Robinson inquired why Chief Roush was at Mr. Khnanisho's apartment asking for these things when they could be returned the following week when Mr. Khnanisho picked up his last paycheck. Chief Roush ignored the inquiry and repeated his demand. Ms. Robinson then advised Mr. Khnanisho to give what Chief Roush was asking for and close the door afterward.

63.     Mr. Khnanisho immediately walked to his closet, grabbed his clothes on the hangers, collected his radio from the kitchen counter, opened his wallet, pulled out the ID card and Badge, and handed these items directly to Chief Roush. The Alice Police Officer asked Chief Roush, "Is this all you were asking for?" He replied, "Yes," turned around and handed all the items to Sergeant Villegas. All three officers then left. None of the officers inquired about the equipment that Mr. Khnanisho had previously turned in to Lieutenant Thurmond and none of the officers returned to Mr. Khnanisho's apartment or attempted to contact him again that day.

64.     Moreover, neither Chief Roush nor anyone else from Mathis informed Mr. Khnanisho that he had been fired or terminated by the Mathis Police Department and he did not receive any paperwork from the Mathis Police Department showing that he was fired or terminated before or after he turned his resignation.

15

65.     On May 31, 2019, Chief Roush contacted the Texas Rangers to file a complaint against Mr. Khnanisho about the arrest he made on May 11. Chief Roush claimed that Mr. Khnanisho abused his powers as a police officer and committed "Official Oppression." No officers from the Texas Rangers have ever taken any action against Mr. Khnanisho for the complaint.

### The unconstitutional arrest, search, and seizure on June 10, 2019

66.     About one week later, on June 10, 2019, at approximately 7:06 p.m., Chief Roush, Lieutenant Thurmond and four Alice Police SWAT Team officers, in their full gear, came to Mr. Khnanisho's apartment and knocked on his door, yelling out "Search Warrant! Open the door, Theodore!" Before he opened the door, Mr. Khnanisho called Ms. Robinson and told her about what was happening. Since she had spoken with Mr. Khnanisho a week ago, Ms. Robinson quickly stated, "What in the world is Scott [Chief Roush] doing? How can he abuse his powers? Open the door. I want to ask him what is going on."

67.     Mr. Khnanisho opened his door and the SWAT Team rushed toward him as he put his telephone on speaker. Ms. Robinson quickly asked Chief Roush through the speakerphone, "Why are you back and why is there a SWAT team present? Why are you abusing your powers, Scott?"  Chief Roush did not respond to Ms. Robinson but just walked back down the apartment stairs. The SWAT team officers entered Mr. Khnanisho's apartment and flashed a "Search Warrant"—which was in fact only an "Affidavit For Search Warrant"—in Mr. Khnanisho's face. They ordered Mr. Khnanisho to put down his cell phone and place his hands behind his back. They then handcuffed him behind his back.

68.     When the officers handcuffed Mr. Khnanisho, he was in his own apartment and had not engaged in, was not engaging in, or was not about to engage in, any criminal offenses.

69.     After the officers handcuffed Mr. Khnanisho, Ms. Robinson asked him to read the "Search Warrant." As Mr. Khnanisho started reading it, Ms. Robinson asked for the names of the

Alice SWAT team, and they gave her their names. Ms. Robinson knew two of the officers because she had represented them in problems they had faced with the Alice Police Department. When Ms. Robinson asked the two Alice SWAT team officers about the "Warrant," they replied that they had not read it until just then because they had been directed by their Police Chief Aniceto "Cheto" Perez to serve the warrant for Mathis Police Chief Roush when they were first starting their shift.

70.     Lieutenant Thurmond began searching Mr. Khnanisho's apartment as he and the SWAT team officers were speaking with Ms. Robinson. These SWAT team officers also searched the apartment. Mr. Khnanisho told these officers that he had one dirty pair of pants and one T-shirt that belonged to the department in the laundry basket he wore on the day he resigned. Mr. Khnanisho further told these officers that he had a baseball cap given to him by Lieutenant Carter and asked them to return it to him. These officers notified Lieutenant Thurmond who was searching Mr. Khnanisho's bedroom of what Mr. Khnanisho gave them. Lieutenant Thurmond marked those three items on the second page of the "Search Warrant".

71.     Lieutenant Thurmond walked out of Mr. Khnanisho's apartment, holding onto two of Mr. Khnanisho's personal bulletproof vests. Lieutenant Thurmond asked Mr. Khnanisho if they belonged to the Mathis Police Department or if they were his personal property. Mr. Khnanisho informed Lieutenant Thurmond that the two bulletproof vests were his personal property. Lieutenant Thurmond then asked, "Do you have any receipts? I need to see those receipts, and I will return them." Mr. Khnanisho said, "You cannot take anything out of my apartment without actually knowing it is the department's property." Lieutenant Thurmond seized the vests anyway, put them in his patrol car, and went back to the apartment. The two vests have not been returned to Mr. Khnanisho as of the filing of this complaint.

72.     The Alice officers subsequently took Mr. Khnanisho downstairs and placed him in an Alice Police vehicle. When Mr. Khnanisho saw Lieutenant Thurmond go back upstairs into his apartment, he complained to the Alice SWAT Team officers that they could not remove him from his apartment while anyone was still inside searching.

73.     The Alice officers then took Mr. Khnanisho out of the patrol car and walked him back upstairs where Lieutenant Thurmond searched inside his apartment without his presence. The Alice officers advised Lieutenant Thurmond that he could not remain in the apartment unaccompanied and needed to exit the apartment. Lieutenant Thurmond replied, "I am almost done searching." The Alice officers again took Mr. Khnanisho downstairs, placed him in a patrol car, and then transported him to the Jim Wells County Jail.

74.     When the Alice officers took Mr. Khnanisho downstairs again, the Alice Police Chief Perez was sitting inside his own vehicle, and Chief Roush was leaning his arms on the passenger side window of the vehicle. As Mr. Khnanisho saw Chief Roush staring at him with a smile, Mr. Khnanisho looked at the vehicles front window to see who else was in that vehicle. He only saw Chief Perez sitting on his driver's seat.

75.     The Alice SWAT team officer who was escorting Mr. Khnanisho didn't know which vehicle to put Mr. Khnanisho in, so the officer told Mr. Khnanisho to wait for a second. While Mr. Khnanisho stood still in the parking lot of his apartment, he kept looking at Chief Roush and Chief Perez because he kept hearing Chief Roush laughing and looking right at him, and then saw Chief Perez laughing as well. The SWAT Team officer returned and placed Mr. Khnanisho in a patrol vehicle.

76.     At no time on June 10, 2019, did Mr. Khnanisho give permission for any of the officers present to enter his apartment, search his residence, seize his personal property, or arrest him in

the absence of probable cause or a valid warrant. Moreover, there were no exigent circumstances sufficient on June 10, 2019, to justify the officers' illegal entry, search, seizure, and arrest.

77.    After Mr. Khnanisho was transported to Jim Wells County Jail, he was booked, fingerprinted, and taken pictures. He waited over 20 hours to be taken out of his cell, walked into another room to stand, and wait for a Magistrate Judge on June 11, 2019.

78.    The Magistrate Judge stated that there was nothing on Mr. Khnanisho's arrest paperwork suggesting to give him a bond. The Magistrate Judge then asked a few other jail staff employees about Mr. Khnanisho's case, but no one knew anything about the case. The Magistrate Judge informed Mr. Khnanisho that he would require Mr. Khnanisho to post bail of $5,000. When asked if he had any cash, Mr. Khnanisho responded "No."

79.    Later on, the Magistrate Judge told Mr. Khnanisho that he would have time to call someone, either a friend or a bondsman. Mr. Khnanisho was returned to his cell and he continued for hours to press on the doorbell in his cell to ask for his phone call. After the guards got tired of Mr. Khnanisho pressing the bell, he was allowed to call a bondsman whose name was on the wall next to the payphone. A couple of hours later, the bondsman bailed Mr. Khnanisho out.

80.    Mr. Khnanisho paid the owner of AAAA Bail bonds Luis O. Garcia $500, 10% of $5,000 for the bond, and an additional fee of $80 because the bondsman was from San Patricio County and Mr. Khnanisho lived in Jim Wells County (Alice, Texas).

**The incidents after June 10, 2019**

81.    The night of the day after his release from jail, June 11, 2019, Mr. Khnanisho contacted Ms. Robinson. On June 14, Ms. Robinson went to the Mathis Police Department to meet with Chief Roush to discuss Mr. Khnanisho's resignation/termination and his unprecedented arrest in law enforcement.

82.   During the meeting, Chief Roush played the body camera footage from the two previously described arrests by Mr. Khnanisho and Chief Roush claimed that these arrests were the basis for Mr. Khnanisho's termination. Chief Roush also indicated to Ms. Robinson that he intended to have Mr. Khnanisho arrested again because he believed that Mr. Khnanisho failed to return all of the property belonging to the Mathis Police Department, most importantly a taser. Ms. Robinson strongly discouraged Chief Roush from pursuing this course of action.

83.   During the meeting, Ms. Robinson requested a copy of any documentation the Mathis Police Department had regarding the issuance of uniforms and equipment to Mr. Khnanisho, but no such documentation was provided. Ms. Robinson further advised Chief Roush that Mr. Khnanisho had informed her that he did not possess any property belonging to the Mathis Police Department.

84.   Ms. Robinson also noticed Mr. Khnanisho's body camera lying on Chief Roush's desk during the meeting. When she asked Chief Roush why he would document the body camera to be searched and seized on a "warrant" when it was clearly in his possession. Chief Roush responded "Oops. Aww…." She advised Chief Roush to "drop the charge or will lose big" and left the Mathis Police Department.

85.   CLEAT Police Union Executive Director and several of their staff attorneys stated to Mr. Khnanisho that they had never heard of a crime like this in their history. They noted that if Mr. Khnanisho had in fact retained some equipment or uniforms, the City of Mathis should have contacted him and requested that he return such items, and then admonish him that if he failed to return any items, the City would deduct the cost of such from his last paycheck.

86.   The CLEAT Staff Attorneys spoke with the San Patricio County Attorney James Gardner and inquired about the status and legality of Mr. Khnanisho's case. Attorney Gardner repeatedly

gave the CLEAT Staff Attorneys a dismissal date for the case on or about the first of every other month for almost six months while also telling them that Mathis was going to send him something and he wanted to review before making a decision. Eventually, Attorney Gardner stopped answering phone calls and emails from CLEAT.

87.     Although months passed, Mr. Khnanisho was not indicted or his case was filed in a court, and he was not served with a criminal complaint, information, or indictment. About seven months later, Ms. Robinson and CLEAT advised Mr. Khnanisho to hire a criminal defense attorney since Attorney Gardner "[was] now ignoring this case." Mr. Khnanisho, with the assistance of CLEAT, searched for a criminal defense attorney to represent him. CLEAT retained Attorney Chris Gale to represent Mr. Khnanisho in November 2019.

88.     Shortly after he was retained, Mr. Gale contacted the Mathis Police Department and requested a copy of the police report regarding Mr. Khnanisho. After a few weeks, Mr. Gale received the report, but it was dated November 27, 2019, which was over five months after the illegal arrest, search and seizure on June 10, 2019.

89.     Mr. Gale also received a copy of Mr. Khnanisho's personnel file from the Mathis Police Department and discovered an unusual letter in the file. The letter was addressed to "all members of the City Council"; it was typed and about two pages long; there was no author or date on the letter; and either Mr. Khnanisho's name or his "signature" appeared in the letter. This letter allegedly reported Chief Roush's possible affair with his newly hired secretary.

90.     When Mr. Gale asked Mr. Khnanisho about the letter, he asked to read it. After reading it, Mr. Khnanisho told Mr. Gale that he knew nothing about the letter and did not understand why it was in his file.

91.     Upon information and belief, City Manager Barrera received the letter and gave it to Chief Roush about a week after he was promoted as Chief. After another officer resigned from the Mathis Police Department in the mid-May, Lieutenant Carter and Mr. Khnanisho were the only two remaining officers who were not on Chief Roush's side 100%, and Carter was not a huge typer. So Chief Roush pointed the finger at Mr. Khnanisho for "reporting" the affair and placed the letter in his personnel file.

92.     On or around May 28, 2020, Mr. Khnanisho found out through Mr. Gale that City Manager Barrera told the media on June 12, 2019, that Mr. Khnanisho "was fired/terminated from the Mathis Police Department for not passing his probation period for having too many complaints." The statements could be watched on YouTube and were found via the link contained in the Webpage, www.newsbreak.com/Texas/Sinton/DailyNews. The statements were clearly untrue and made with malice.

93.     On July 20, 2020, County Attorney Gardner informed Mr. Gale via email that he had decided to "no charge" Mr. Khnanisho's case and would have his investigator issued a "no charge" letter and sent to Mr. Gale's office.

94.     On September 23, 2020, Mr. Gale provided Mr. Khnanisho with the "no charge" letter dated September 21, 2020. The letter stated, "The charge of Theft $750 - $2,500 was not filed on Theodore Leon Khnanisho. The evidence was insufficient to prove beyond a reasonable doubt."

95.     Mr. Khnanisho has not been able to apply for a position with any police department or government agency because he was wrongfully arrested for the theft charge.

96.     Due to the unbearable embarrassment and humiliation resulting from his arrest on June 10, 2019, Mr. Khnanisho had to terminate the lease on his apartment in Alice before the lease

expired, move out of the apartment on June 15, and suffer the forfeiture of his $300 security deposit for the early termination.

**Mathis Police Department incident report and affidavit ("warrant")**

97.    Sergeant Villegas generated and Lieutenant Thurmond approved the Mathis Police Department report (Case Number: 1900001909). The report was dated "11/27/2019," but the "Report Date" and the "Approved Date" were set out as "6/10/2019."

98.    The report charged Mr. Khnanisho with allegedly committing the offense of theft, which commenced on May 29, 2019, and ended on June 10, 2019, in violation of Texas Penal Code § 31.03(e)(3) [Theft].

99.    Texas Penal Code § 31.03(e)(3) states, "a Class A misdemeanor if the value of the property stolen is $750 or more but less than $2,500." And § 31.03(a) defines, "A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property."

100.    The report explained that Mr. Khnanisho "was terminated from the Mathis Police Department and failed to return various items." The claimed stolen items were listed in the report as follows: Body Camera Accessories (3) with total value of $1.00; Cartridge (2), $100.00; Uniform Pants (2), $142.18; Ballistic Vest (1), $499; Keys (2), $500.00; Taser Holster (1), $75.00; Taser (1), $800.00; and Taser Battery (1), $60.00." The report also noted, "Warrant Requested."

101.    In the report generated by Sergeant Villegas, he stated that Chief Roush contacted him via cell phone at approximately 14:00 hours on May 29, 2019 and advised Mr. Khnanisho "was going to be terminated due to various policy violations and performance issues." Chief Roush

advised him to contact Mr. Khnanisho via cell phone and "instruct him to be at the Mathis Police Department by 16:00 with all his issued gear along with his Badge and identification card."

102.    Sergeant Villegas stated that he contacted Mr. Khnanisho as instructed and told him to report to the Mathis Police Department with all his issued gear at 16:00 to meet with Chief Roush. Per Sergeant Villegas's statement, Mr. Khnanisho allegedly said "okay" and ended the phone call.

103.    Sergeant Villegas subsequently noted that after Mr. Khnanisho failed to appear at the Police Department as instructed, Chief Roush contacted the Alice Police Department, advised their shift supervisor Corporal DeLeon of the situation, and requested a standby. Sergeant Villegas stated that he, Chief Roush, and Corporal DeLeon then went to Mr. Khnanisho's apartment in Alice, Texas. The three officers made contact with Khnanisho at his front door. Sergeant Villegas stated that after Mr. Khnanisho opened his front door: 1) Chief Roush advised Mr. Khnanisho "we need Department issued gear"; 2) "Theodore retrieved some of his uniforms and handed them to Chief Roush;" and 3) Chief Roush "asked for the remainder of the gear along with Theodore's Badge and identification card."

104.    Sergeant Villegas further stated that he told Chief Roush that uniform items including one short sleeve shirt and two pairs of pants were missing after Mr. Khnanisho had handed Chief Roush his uniforms, Badge, ID card, and police radio along with the charger. Sergeant Villegas then stated that Mr. Khnanisho allegedly said that one of his short sleeve shirts was "down" and "that's all" when closing his front door. At this point, Sergeant Villegas told Chief Roush they were also missing gear including a Taser and a Ballistics Vest.

105.    Sergeant Villegas claimed in the report that "Chief Roush knocked on the front door to make contact a second time and request the remainder of the missing gear. Theodore answered

the door and Chief Roush advised we needed the remainder of the missing uniforms along with his Taser, Ballistic Vest, and issued gear." Mr. Khnanisho allegedly "advised that he had his own vest and stated 'that's all your getting' before he slammed the front door."

106.    After the alleged second contact with Mr. Khnanisho, Sergeant Villegas contended in the report that he "advised Chief Roush we did not have all of the issued gear or uniforms. Chief Roush advised me to compile a list of missing items and a certified letter would be sent to Theodore to obtain the gear. The remaining items list [*sic*] as such, 1 Taser X26 with 2 cartridge and 1 battery pack, 1 Taser holster, 1 Ballistic Vest, 2 Uniform pants, Body camera accessories, battery pack clip, power wire, and headband, 1 key to patrol room, and 1 key to Police Department. The value of the items not returned totaled to approximately $2, 200 dollars."

107.    The report alleges that the "Mathis Police Department sent Theodore a certified letter and noted he had 24 hours to return the gear. Theodore did not respond to the letter and failed to return the gear belonging to the Mathis Police Department."

108.    Indeed, Mr. Khnanisho received the certified letter on June 12, 2019, after being released from the jail. In the letter dated June 4, 2019, and signed by Chief Roush, the items requested to be returned are listed as:

- 1- Taser X26
- 2-Taser Cartridge
- 1-Taser holster
- 1-Taser battery
- 1- Ballistic Vest
- Keys to the Patrol Office
- Keys to the Police Department side door
- 2-Uniform Pants
- Video Recorder Equipment for Body Camera

109.    Under the "Disposition" of the report, it stated, "Theodore Khnanisho failed to return gear belonging to the Mathis Police Department upon termination. Further efforts were made to

25

obtain the gear by certified letter with no response. Theodore still has failed to return the items. A report was generated and was forwarded to the Mathis Criminal Investigation Department. A warrant is requested for the arrest of Theodore Khnanisho for the above said charge."

110.    The report does not mention that Chief Roush, Sergeant Villegas, or anyone else, ever notified Mr. Khnanisho, orally or in writing, that he had been fired or terminated by the Mathis Police Department.

111.    Lieutenant Thurmond created a supplement to Mathis Police Department report in Case Number 1900001909 and it was assigned Number 1900002909-1.  In this supplement, he claimed that on Monday, June 10, 2019, he "obtained a search warrant on (former Mathis Police Officer) Theodore 'Teddy' Khnanisho for his apartment . . . .  I along with officers from Alice Police Department were able to execute the search warrant on Theodore without incident, Two Ballistic Vests, one uniform pants, and one uniform shirt was recovered at the apartment. Several other items belonging to The Mathis Police Department were still missing." In a second supplement, Case No. 1900002909-2, Lieutenant Thurmond valued the recovered items at $499.00, $71.09, and $71.09, respectively.

112.    There is nothing in Lieutenant Thurmond's supplemental reports stating that Chief Roush, Lieutenant Thurmond, or anyone else, ever notified Mr. Khnanisho, orally or in writing that the Mathis Police Department had fired or terminated him.

113.    In his sworn Affidavit For Search Warrant ["Affidavit"], Lieutenant Thurmond, based on his belief, listed the alleged stolen property by Mr. Khnanisho as follows: "1 TASER X26 W/2 TASER CARTRIDGES, 1 AXPM BATTERY PACK, 1 TASER HOLSTER, 1 BALLISTIC VEST, 2 UNIFORM PANTS, 1 BATTERY PACK CLIP, 1 POWER WIRE, 1 HEADBAND, 1

KEY TO MATHIS POLICE DEPARTMENT AND 1 KEY TO OFFICER'S PATROL BUILDING TOTALING $2,200.00."

114.    In this Affidavit, under "AFFIANT HAS PROBABLE CAUSE OF SAID BELIEF REASON OF THE FOLLOWING FACTS," it stated, "Affiant is a Peace Officer with authority in this County and is assigned to investigate crimes against persons and crimes against property for the Mathis Police Department." It further stated, "Affiant believes that the probability exists that **AFOREMENTIONED stated items** are being kept and stored inside the personal residence of **THEODORE LEON KHANISHO** located…."

115.    Lieutenant Thurmond, however, intentionally omitted from the Affidavit the fact that, early morning of May 29, 2019, in his office at the Mathis Police Department, Mr. Khnanisho turned in to him a bulletproof vest, two keys, a taser, a body camera, and all the accessories parts they came with, on top of his desk. Lieutenant Thurmond also failed to state that Lieutenant Carter witnessed Mr. Khnanisho placed these items on Lieutenant Thurmond's desk before Lieutenant Carter and Mr. Khnanisho left his office. In the Affidavit, Lieutenant Thurmond did not ask for the arrest of Mr. Khnanisho.

116.    The Affidavit was previously typed with a year of 2017, but the year of 2017 had a line drawn through it and a handwritten 2019 above it.

117.    Lieutenant Thurmond signed the Affidavit as the affiant, and Michael Garcia, Judge of County Court at Law, Jim Wells County, Texas, signed his name on the Affidavit on June 10, 2019. The Affidavit does not show the time that Judge Garcia signed it and there is no stamp on the Affidavit displaying the time that the court received the Affidavit.

118.    Neither Judge Garcia, a Magistrate, or any other Judge in Jim Wells County ever issued a search warrant for Mr. Khnanisho and his apartment that would allow a search and subsequent seizure of allegedly stolen property or Mr. Khnanisho's personal property.

119.    Neither Judge Garcia, a Magistrate, or any other Judge in Jim Wells County ever issued a warrant for the arrest of Mr. Khnanisho or a search warrant also authorizing the arrest of Mr. Khnanisho.

120.    There is no documentation showing that the Mathis Police Department submitted paperwork to Judge Garcia, a Prosecutor or Judge in Jim Wells County, or a Prosecutor or Judge in San Patricio County to charge Mr. Khnanisho with a criminal offense.

121.    The day after Judge Garcia signed the Affidavit, he advised his staff to contact the Mathis Police Department to ask for returns of the Affidavit along with the facts showing that Mr. Khnanisho was guilty. The Mathis Police Department never returned the Affidavit or relevant facts to Judge Garcia or his Court.

122.    Therefore, a case was never filed in Jim Wells County Court at Law.

123.    At all times relevant to this Complaint, Defendants Chief Roush, Lieutenant Thurmond, Sergeant Villegas, Chief Perez, and City Manager Barrera acted willfully, recklessly, and callously in violating Mr. Khnanisho's rights under Federal and State law.

124.    At all times relevant to this Complaint, Chief Roush personally participated in violating Mr. Khnanisho's federal and state law rights by abusing his Chief power to retaliate against Mr. Khnanisho because Chief Roush wrongly believed that Mr. Khnanisho reported his affair with his newly hired secretary.

## VII.    CAUSES OF ACTION

### Count One

### Actions against individually named police officers under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments

125.    Plaintiff adopts by reference the facts and allegations set forth above as though fully set forth herein.

126.    The Fourth Amendment protects citizens from unreasonable seizures and searches. The Fourth Amendment applies to the states through the Fourteenth Amendment.

127.    The Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty, or property without due process of law."

128.    42 U.S.C. § 1983 provides, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

129.    At all times relevant to this Complaint, Defendants Chief Roush, Lieutenant Thurmond, and Sergeant Villegas were acting under color of state law because they were employed by the City of Mathis, Texas, and were performing their official duties.

130.    At all times relevant to this Complaint, Defendant Chief Perez was acting under color of state law because he was employed by the City of Alice, Texas, and performing his official duties.

131.    The actions of Defendants Chief Roush, Lieutenant Thurmond, Sergeant Villegas, and Chief Perez violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable arrest, unreasonable search, and unreasonable seizure.

132.    Plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable arrest, unreasonable search, and unreasonable seizure were clearly established at the time of all events in this case.

133.    The actions of Defendants Chief Roush, Lieutenant Thurmond, and Sergeant Villegas violated Plaintiff's due process right under the Fourteenth Amendments to the U.S. Constitution not to have police deliberately fabricate evidence and use it to frame and bring false charges against him.

134.    Plaintiff's due process right under the Fourteenth Amendments to the U.S. Constitution not to have police deliberately fabricate evidence and use it to frame and bring false charges against him was clearly established at the time of all events in this case.

135.    Defendants Chief Roush, Lieutenant Thurmond, Sergeant Villegas, and Chief Perez are liable for conspiracy under 42 U.S.C. § 1983 because they reached an agreement between them and acted in concert to violate Plaintiff's constitutional rights.

136.    Upon information and belief, Chief Roush was callously indifferent in supervising, training, or both, the subordinates as to how to investigate a person alleged to have committed an offense, how to prepare an affidavit to apply for and obtain a warrant, and how to execute a warrant. Chief Roush personally participated in and was callously indifferent to violating Plaintiff's constitutional rights. Further, Chief Roush's callous indifference directly and proximately caused Lieutenant Thurmond and Sergeant Villegas to engage in conduct that violated Plaintiff's constitutional rights.

137.     Upon information and belief, Chief Roush exhibited deliberate indifference to Plaintiff's constitutional rights by directing, encouraging, ratifying, and/or approving Lieutenant Thurmond and Sergeant Villegas' unconstitutional conduct.

138.     Upon information and belief, Chief Roush exhibited deliberate indifference to Plaintiff's constitutional rights by failing to prevent, discipline, or take other actions at the time Lieutenant Thurmond and Sergeant Villegas engaged in unconstitutional conduct.

139.     Upon information and belief, Chief Perez was callously indifferent in supervising, training, or both, the subordinates as to how and when to legally enter and search a person's residence and arrest the person. Chief Perez was also callously indifferent when he personally participated in violating Plaintiff's constitutional rights. Chief Perez's callous indifference directly and proximately caused the Alice Police SWAT Team officers' unconstitutional conduct that violated Plaintiff's constitutional rights.

140.     Upon information and belief, Chief Perez exhibited deliberate indifference to Plaintiff's constitutional rights by failing to prevent, discipline, or take other actions at the time the Alice Police SWAT Team officers' unconstitutional conduct was occurring.

**Count Two**

**Actions against the City of Mathis and the City of Alice
under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments**

141.     Plaintiff adopts by reference the facts and allegations set forth above as though fully set forth herein.

142.     Chief Roush, the policymaker for the internal police policy of the Mathis Police Department on behalf of the City of Mathis, Texas, personally participated in, encouraged, and/or ratified 1) the warrantless, unjustified, and unlawful arrest of  Mr. Khnanisho for the alleged offense of theft in the complete absence of probable cause or exigent circumstances; 2)

the warrantless, unjustified, and unlawful entry into and search of Mr. Khnanisho's residence without consent, a valid warrant, probable cause, or an exception to the warrant requirement; and 3) the warrantless, unjustified, and unlawful seizure of Mr. Khnanisho's personal property inside his residence without consent, a valid warrant, probable cause, or an exception to the warrant requirement.

143.   Chief Roush, the authorized decision maker of the Mathis Police Department on behalf of the City of Mathis, Texas, made the decisions to adopt the particular course of action to 1) arrest Mr. Khnanisho for the alleged offense of theft without probable cause, a valid warrant, or a justified exigency; 2) enter and search Mr. Khnanisho's residence without consent, a valid warrant, probable cause, or an exception to the warrant requirement; and 3) seize Mr. Khnanisho's personal property without consent, a valid warrant, probable cause, or an exception to the warrant requirement.

144.   Chief Roush made the decisions stated above in Paragraph No. 143 to retaliate against Mr. Khnanisho for allegedly "reporting" Chief Roush's possible affair with his newly hired secretary.

145.   Chief Roush's personal participation in violating Mr. Khnanisho's constitutional rights represented an act of official government "policy" of the City of Mathis, Texas; therefore, the City of Mathis is liable for Chief Roush's unconstitutional actions.

146.   The actions and/or inactions of Defendant City of Mathis, Texas, directly and proximately caused Chief Roush, Lieutenant Thurmond, and Sergeant Villegas' conduct violating Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution and causing Plaintiff's damages. The City of Mathis had encouraged, tolerated, and ratified the officers' unconstitutional conduct, and has been deliberately indifferent to the

following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the area of:

a.    Legal cause to arrest and criminally charge a citizen;

b.    Legal cause to enter and search a citizen's home;

c.    Legal cause to seize a citizen's personal property inside the citizen's residence;

d.    The correct legal process for obtaining and executing search and arrest warrants;

e.    The proper exercise of police powers, including, but not limited to, initiating and bringing criminal charges, procuring and serving valid warrants, legally entering and searching a residence, and seizing personal property inside a residence;

f.    Officer's constitutional duties to disclose all relevant evidence, including exculpatory evidence, when procuring a warrant, signing an affidavit, and initiating and bringing criminal charges;

g.    The failure to identify and take remedial or disciplinary action against officers who were the subject of civilian complaints of misconduct;

h.    The failure to properly sanction or discipline Mathis Police Department officers who are aware of and conceal and/or aid and abet constitutional and statutory violations of citizens' rights; and

i.    The wrongful practice by Mathis Police Department officers of initiating and instituting false charges against citizens.

147.    Upon information and belief, the City of Mathis, Texas, by and through its policymaker, Chief Roush, the City Council, or both, had notice of the Mathis Police Department Officers' violations of constitutional rights but failed and refused to take action to prevent and stop such violations.

33

148.     Chief Perez, the policymaker for the internal police policy of the Alice Police Department on behalf of the City of Alice, Texas, personally participated in, encouraged, and/or ratified 1) the wrongful arrest of Mr. Khnanisho for the alleged offense of theft in the absence of probable cause, a valid warrant, or a justified exigency; 2) the wrongful entry into and search of Mr. Khnanisho's residence in the absence of consent, a valid warrant, probable cause, or an exception to the warrant requirement; and 3) the wrongful seizure of Mr. Khnanisho's personal property inside his residence in the absence of consent, a valid warrant, probable cause, or an exception to the warrant requirement.

149.     Chief Perez, the authorized decision maker of the Alice Police Department on behalf of the City of Alice, Texas, made the decisions to adopt the particular course of action to 1) arrest Mr. Khnanisho for the alleged offense of theft without probable cause, a valid warrant, or a justified exigency; 2) enter and search Mr. Khnanisho's residence without consent, a valid warrant, probable cause, or an exception to the warrant requirement; and 3) seize Mr. Khnanisho's personal property inside his residence without consent, a valid warrant, probable cause, or an exception to the warrant requirement.

150.     Chief Perez's personal participation in violating Mr. Khnanisho's constitutional rights represented an act of official government "policy" of the City of Alice, Texas; therefore, the City is liable for Chief Perez's unconstitutional actions.

151.     The actions and/or inactions of Defendant City of Alice, Texas, directly and proximately caused the Alice Police SWAT Team officers and Chief Perez's conduct violating Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution and causing Plaintiff's damages. The City of Alice, Texas, had encouraged, tolerated, and ratified the officers' unconstitutional conduct, and has been deliberately indifferent to the following policies,

patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the area of:

a. Legal cause to arrest a citizen;

b. Legal cause to enter and search a citizen's home;

c. The proper exercise of police powers, including, but not limited to, the requirements for a valid arrest and/or search warrant, the making of an arrest, the entry into and search of a person's residence, and the seizure of a person's personal property inside the person's residence;

d. The failure to identify and take remedial or disciplinary action against officers who were the subject of civilian complaints of misconduct; and

e. The failure to properly sanction or discipline officers who are aware of and conceal and/or aid and abet constitutional and statutory violations of citizens' rights by the Alice Police Department officers.

152. Upon information and belief, the City of Alice, Texas, by and through its policymaker, Chief Perez, the City Council, or both, had notice of the violations of constitutional rights by its officers and failed and refused to take action to stop and prevent such violations.

## Count Three

### Actions under Texas State laws
**against Chief Roush, Lt. Thurmond and Sgt. Villegas for malicious criminal prosecution and against City Manager Barrera for defamation**

153. Plaintiff adopts by reference the facts and allegations set forth above as though fully set forth herein.

154. Defendants Sergeant Villegas and Lieutenant Thurmond aided, cooperated, and commenced a criminal action for the offense of theft against Mr. Khnanisho without any probable cause or supporting facts.

35

155.   Chief Roush plotted, instructed, encouraged, and ratified Sergeant Villegas and Lieutenant Thurmond's initiation and bringing of a malicious criminal prosecution against Mr. Khnanisho.

156.   The actions of Defendants Chief Roush, Lieutenant Thurmond, and Sergeant Villegas constitute malicious prosecution under the laws of the State of Texas.

157.   The actions of Defendant City Manager Barrera constitute defamation under the laws of the State of Texas because 1) City Manager Barrera made public false statements regarding the firing and/or termination of Mr. Khnanisho from the Mathis Police Department after he had already resigned from the department and 2) City Manager Barrera made the statements with knowledge of or reckless disregard for its falsity.

## VIII.   LACK OF QUALIFIED/OFFICIAL IMMUNITY

158.   Plaintiff adopts by reference the facts and allegations set forth above as though fully set forth herein.

159.   Defendant Police Officers' actions violated "clearly established statutory and constitutional rights of which a reasonable officer would have known."

160.   Defendant Police Officers arrested Mr. Khnanisho for alleged theft without probable cause, without a warrant supported by probable cause, and without a justified exigency.

161.   No reasonable officer confronting the same or similar situation as these Defendant Police Officers would have reasonably believed and concluded that it was appropriate to arrest Mr. Khnanisho and take him to jail for a crime he did not commit. Thus, Defendant Police Officers should not enjoy the protection of qualified immunity and thus avoid accountability in this case.

162.    Defendant Police Officers entered and searched Mr. Khnanisho's residence and seized his personal property inside the residence without consent, a valid warrant, probable cause, or a recognized exception to the warrant requirement.

163.    No reasonable officer confronting the same or similar situation as Defendant Police Officers would have reasonably believed and concluded that it was appropriate to enter and search Mr. Khnanisho's residence and seize his personal property inside the residence without consent, a valid warrant, probable cause, or a recognized exception to the warrant requirement; therefore, Defendant Police Officers are not entitled to qualified immunity.

164.    Defendants Lieutenant Thurmond, Sergeant Villegas, and Chief Roush initiated, or aided or cooperated in initiating, the criminal action of theft against Mr. Khnanisho without probable cause, and they clearly did so with malice.

165.    No reasonable officer confronting the same or similar situations that Defendants Lieutenant Thurmond, Sergeant Villegas, and Chief Roush would have reasonably concluded that the malicious criminal prosecution of Mr. Khnanisho for a crime he did not commit was appropriate; therefore, they should not be protected by official immunity.

166.    Defendant City Manager Barrera made, either knowingly or with reckless disregard for the falsity, defamatory statements that Mr. Khnanisho was fired/terminated from the Mathis Police Department for not passing his probation period for having too many complaints. These statements were clearly made after Mr. Khnanisho had resigned from the Mathis Police Department because of the department's unprofessionalism.

167.    No reasonable officer under the same or similar situation as Defendant City Manager Barrera would have reasonably concluded that publishing defamatory information about Mr. Khnanisho was appropriate; therefore, City Manager Barrera should not enjoy official immunity.

## IX.    DAMAGES AND ATTORNEYS' FEES

168.    Plaintiff adopts by reference the facts and allegations set forth above as though fully set forth herein.

169.    As a direct and proximate result of all defendants' unlawful actions or omissions, Plaintiff suffered deprivations of his constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the U.S. Constitution.

170.    As a direct and proximate result of the unlawful and wrongful actions or omissions by Defendant Police Officers and Defendant City Manager Barrera, Plaintiff suffered deprivations of his rights protected by the Texas State laws.

171.    As a direct and proximate result of the conduct of all defendants, Plaintiff suffered financial loss totaling $51,280: 1) Loss of wages and earnings resulting from the false arrest for the theft charge in the amount of $48,000; 2) unlawfully seized and continued deprivation of ownership of his two personal bulletproof vests valued at $2,400; 3) bail bond purchased in the amount of $580.00; and 4) the forfeiture of his $300 security deposit for the early termination of his apartment lease.

172.    As a direct and proximate result of the conduct of all defendants, Plaintiff suffered extraordinary damages, some of which may be permanent, including Plaintiff's loss of liberty, emotional distress and trauma, physical symptoms of anxiety such as stress, fear, headaches, difficulty sleeping, and nightmares, the loss of good name and reputation, suffering from shame, embarrassment, humiliation, mental anguish, pain and suffering, and such other compensatory and tangible consequential damages as the law entitles Plaintiff to recover.

173.    Plaintiff is entitled to damages for his mental anguish and any other damages to which he might be legally entitled due to all defendants' actions.

174.    Plaintiff seeks punitive damages against Defendant Officers for their intentional, willful and wanton acts violating "clearly established statutory and constitutional rights of which a reasonable officer would have known."

175.    Plaintiff sues for damages of $950,000 and prays for just and fair recovery.

176.    Plaintiff is entitled to an award of attorneys' fees and costs under 42 U.S.C. § 1988(b).

177.    Plaintiff is entitled to an award of attorneys' fees and costs for state law claims under equity.

## X.      PRAYER FOR RELIEF

178.    For the foregoing reasons, Plaintiff respectfully requests judgment for the following and asks the Court to:

a.      Enter a declaratory judgment that Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights to be free in his person, home, and personal property from unreasonable arrest, search, and seizure in the absence of consent, a valid warrant, probable cause, or any justified exigencies;

b.      Award compensatory damages as described above in Section IX against all defendants, jointly and severally, in an amount to be determined at trial;

c.      Alternatively, award nominal damages for violations of Plaintiff's civil rights;

d.      Award punitive damages against individually named defendants;

e.      Award costs, expenses, and counsel fees under 42 U.S.C. § 1988(b);

f.      Award costs, expenses, and counsel fees for state law claims under equity; and

g.      Enter such other relief, as this Honorable Court may deem just and deserving.

DATED this <u>27th</u>  day of October, 2020.

Respectfully submitted,

By:  s/ Lunbing Chen
Lunbing Chen
State Bar No. 24097493
Southern District of Texas Bar No. 3600461
Email: lunbing@altafferlaw.com

Kervyn B. Altaffer Jr.
State Bar No. 01116575
Southern District of Texas Bar No. 6409
Email: kervyn@altafferlaw.com
Attorney-In-Charge

ALTAFFER & CHEN PLLC
4054 McKinney Ave Ste 310
Dallas, TX 75204
Tel: 972-234-3633
Fax: 972-947-3663

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

This Plaintiff's Original Complaint and Jury Demand is being served upon each defendant by hand delivery.