United States District Court
Southern District of Texas
**ENTERED**
May 24, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| THEODORE LEON KHNANISHO, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:20-CV-265 |
| § | |
| MARSHALL SCOTT ROUSH, *et al.*, § | |
| § | |
| Defendants. § | |

## ORDER

Before the Court is City of Alice Chief of Police Aniceto Perez ("Chief Perez") and City of Alice, Texas's ("Alice") motion to dismiss. (D.E. 19). These defendants seek to dismiss the following: (1) Plaintiff Theordore Leon Khnanisho's ("Plaintiff") § 1983 claim against Chief Perez in his individual and official capacity for conspiracy to violate Plaintiff's constitutional rights, and (2) Plaintiff's § 1983 claim against Chief Perez in his individual and official capacity and against Alice for violating Plaintiff's Fourth and Fourteenth Amendment rights to be free from unreasonable arrest and search. *Id.*; (D.E. 1, p. 30, 34–35). For the reasons set forth below, Chief Perez and Alice's motion to dismiss (D.E. 19) is **GRANTED** in part and **DENIED** in part.

### I. Background

This summary of relevant facts to this motion to dismiss is drawn from Plaintiff's complaint and documents in the public record attached to Chief Perez and Alice's motion to dismiss. (D.E. 1; D.E. 19-1–19-3). Plaintiff is a former police officer for City of Mathis Police Department. (D.E. 1, p. 5). He was a police officer for the Mathis Police Department

from January 22, 2019 to May 29, 2019. *Id.* The events relevant to this motion begin on May 29, 2019. On that date, a series of events created substantial friction between Plaintiff and the leadership of Mathis Police Department, including Defendant Chief of Police Marshall Roush ("Chief Roush"). After these events, Plaintiff told Lieutenant Tom Carter ("Lt. Carter") "that he was done working for Mathis Police Department and wanted to turn in things he had that day to Chief Roush." *Id.* at 12. Chief Roush was not in his office, so Plaintiff and Lt. Carter walked to Lieutenant Thurmond's ("Lt. Thurmond") office. *Id.* Lt. Carter told Lt. Thurmond that Plaintiff was going to turn in his gear to Lt. Thurmond since Chief Roush was not in the office yet. *Id.* Plaintiff placed "a bulletproof vest, two keys, a taser, a body camera, and all the accessor[y] parts they came with, on top of [Lt.] Thurmond's desk while he and [Lt.] Carter watched." *Id.* Lt. Thurmond returned to his office. *Id.* Plaintiff did not return the department-issued t-shirt and pair of pants he was wearing but did not intend on keeping the clothes permanently. *See id.*

Later that day, at approximately 6:40 p.m., Chief Roush, Defendant Sergeant Brandon Villegas ("Sgt. Villegas"), and a City of Alice Police Department officer arrived at Plaintiff's apartment, knocked on his door, and yelled Plaintiff's name. *Id.* at 14. Plaintiff called Celeste Robinson ("Robinson"), a staff attorney with the Combined Law Enforcement Associates of Texas, before opening the door. *Id.* at 15. After Plaintiff opened the door, Chief Roush asked Plaintiff to give him the department-issued uniforms, radio, and identification. *Id.* Robinson, who was still on the phone, asked Chief Roush why he was at Plaintiff's apartment when Plaintiff could return the remaining items when Plaintiff picked up his last paycheck the following week. *Id.* Chief Roush repeated his demand, and

2 / 13

Robinson told Plaintiff to give Chief Roush the items and close the door afterwards. *Id.* Plaintiff retrieved the requested items and handed them to Chief Roush. *Id.* The Alice police officer then asked Chief Roush, "[i]s this all you were asking for?" to which Chief Roush responded, "[y]es." *Id.*

Plaintiff claims that he "was never asked to sign an itemized property list," that "[h]e never saw a property list[,] and, to his knowledge, the Mathis Police Department did not require any other officers to sign for equipment, keys, or clothing." *Id.* at 12–13.

On June 10, 2019, at approximately 7:06 p.m., Chief Roush, Lt. Thurmond, and four Alice Police Department SWAT Team officers ("in their full gear"), arrived at Plaintiff's apartment in Alice, Texas. (D.E. 1, p. 16). The officers knocked on Plaintiff's door and yelled, "Search Warrant! Open the door, Theodore!" *Id.* Plaintiff was inside his apartment. *See id.* As with the May 29th incident, Plaintiff called Robinson before opening the door and kept her on the line on speakerphone. *Id.* at 16. When Plaintiff opened the door, the Alice SWAT Team officers entered Plaintiff's apartment without Plaintiff's consent, showed him a search warrant (which was in fact a probable cause affidavit for a search warrant), placed his hands behind his back, and handcuffed him. *Id.* Robinson asked the Alice SWAT Team officers about the "search warrant." *Id.* at 17. The Alice SWAT Team officers "replied that they had not read it until just then because they had been directed by . . . [Chief] Perez to serve the warrant for . . . Chief Roush when they were first starting their shift. *Id.*

Lt. Thurmond and the Alice SWAT Team officers all searched Plaintiff's apartment. *Id.* The aforementioned t-shirt and pair of pants that Plaintiff did not return on May 29th

(the day he left various items on Lt. Thurmond's desk) were seized, along with two bulletproof vests that Plaintiff claims were his personal property. *Id.* Plaintiff told Lt. Thurmond that the vests were his personal property, but Lt. Thurmond seized them anyway, saying he would return them if Plaintiff gave him the receipts. *Id.*

The Alice SWAT Team officers escorted Plaintiff to an Alice Police Department vehicle. *Id.* at 18. But when Plaintiff saw Lt. Thurmond go back into his apartment, Plaintiff demanded that he be taken back to his apartment while Lt. Thurmond kept searching. *Id.* Once back in the apartment, the Alice SWAT Team officers told Lt. Thurmond that he could not remain in the apartment by himself and needed to leave. *Id.* After Lt. Thurmond replied that he was almost done searching, the Alice SWAT Team officers escorted Plaintiff back to where their police vehicles were located. *Id.*

During this second trip, Plaintiff noticed that Chief Perez was present, sitting in his police vehicle conversing with Chief Roush. *Id.* Plaintiff saw Chief Roush stare at him and smile. *Id.* There was some confusion as to which Alice police vehicle Plaintiff would be transported to Jim Wells County Jail in, so Plaintiff stood in his apartment complex's parking lot. *Id.* While standing there, "he kept looking at Chief Roush and Chief Perez because he kept hearing Chief Roush laughing and looking right at him, and then saw Chief Perez laughing as well. *Id.* Plaintiff was ultimately transferred to Jim Wells County Jail by one or more of the Alice SWAT Team officers. *Id.* at 19.

Prior to these events, Lt. Thurmond had completed a probable cause affidavit for Plaintiff's arrest alleging violations of Texas Penal Code section 31.03, theft of property valued between $750 and $2,500. (D.E. 19-1). Judge Daniel Garza, Precinct 2 Justice of

the Peace, of San Patricio County, Texas signed a Warrant of Arrest for Plaintiff for the same offense. (D.E. 19-2). The arrest warrant came to hand on June 10, 2019 at 6:45 pm, about 22 minutes before the officers arrived at Plaintiff's apartment. *See id.*

Lt. Thurmond also prepared a probable cause affidavit for a search warrant. (D.E. 19-3). Part of the affidavit reads, "WHEREFORE, Affiant asks for issuance of a warrant that will authorize affiant and other peace officers to search said suspected place and premises for the property described above and seize same." *Id.* Judge Michael Garcia of County Court at Law, Jim Wells County, Texas signed the affidavit and dated it June 10, 2019. *Id.* To date, no search warrant has been produced to this Court, and the Court presumes none exists.

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The facial plausibility standard is not a probability standard, but it requires the plaintiff's factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While a court must take all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, a court is not bound "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555). A complaint that "pleads facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557).

When ruling on a Rule 12(b)(6) motion to dismiss, the Court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal citations omitted); *see also Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

### III. Discussion

#### A. Plaintiff's § 1983 claim for conspiracy to violate constitutional rights.

Plaintiff contends in his complaint that "Chief Roush, [Lt.] Thurmond, [Sgt.] Villegas, and Chief Perez acted in concert and conspiracy, and were jointly and severally responsible for the constitutional harms caused to Plaintiff." (D.E. 1, p. 4). Plaintiff sues Chief Perez in his individual and official capacity, therefore making this claim against not only him, but Alice as well. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (explaining that official-capacity suits against government officials under § 1983 are "another way of pleading an action against an entity of which an officer is an agent."). Chief Perez and Alice seek the dismissal of this claim "given the bare-bones nature of Plaintiff's allegations." (D.E. 19, p. 8). According to Chief Perez and Alice, the only factual basis in

support of Plaintiff's conspiracy claim is the interaction Plaintiff had with Chief Roush and Chief Perez outside Plaintiff's apartment. *See* (D.E. 19, p. 7–8). When Plaintiff was being escorted outside his apartment, he saw Chief Perez sitting in his police vehicle and Chief Roush leaning on it. (D.E. 1, p. 18). Plaintiff saw Chief Roush stare at him and smile. *Id.* Plaintiff kept looking at Chief Roush and Chief Perez because "he kept hearing Chief Roush laughing and looking right at him, and then saw Chief Perez laughing as well." *Id.*

To have a plausible § 1983 conspiracy claim, a plaintiff must allege sufficient facts to support a reasonable inference that (1) a conspiracy involving state action existed; and (2) "a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy" occurred. *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019).

Plaintiff has not alleged sufficient facts for this Court to make a reasonable inference that Chief Perez was part of any potential conspiracy to deprive Plaintiff of his Fourth and Fourteenth Amendment rights. A plaintiff must show that the defendants made a prior agreement to commit an illegal act. *See Arsenaux v. Roberts*, 726 F.2d 1022, 1023–24 (5th Cir. 1982). The specific, nonconclusory allegations regarding Chief Perez's involvement was limited to the following: (1) he ordered Alice police officers to assist Mathis Police Department in executing a search warrant when the Alice police officers were starting their shift; (2) he was present when Plaintiff was arrested; and (3) he and Chief Roush laughed together while Chief Roush looked directly at Plaintiff in the parking lot during the arrest. (D.E. 1, p. 17–18). There are no allegations that Chief Perez was at all involved in the attempts to obtain a search warrant or arrest warrant for Plaintiff; only Mathis Police Department officers, primarily Lt. Thurmond, undertook that endeavor. *See id.* at 26–27.

Nor are there any allegations that Chief Perez knew that no search warrant actually existed.

In short, it is speculative that Chief Perez was part of any prior agreement to violate Plaintiff's constitutional rights. *See Twombly*, 550 U.S. at 555. As such, Plaintiff's § 1983 conspiracy claim against Chief Perez and Alice must be dismissed. To be clear, the Court does not find that no conspiracy to violate Plaintiff's constitutional rights existed. The Court merely finds that Plaintiff has failed to allege sufficient facts to show that *Chief Perez* specifically was plausibly a member to one. The conspiracy claim against Chief Roush, Lt. Thurmond, and Sgt. Villegas remains.

### B. The remaining section 1983 claim against Chief Perez in his official capacity is duplicative of that against the Alice and are therefore dismissed.

Chief Perez moves to dismiss Plaintiff's § 1983 claim against Chief Perez in his official capacity for violating Plaintiff's Fourth and Fourteenth Amendment rights because it duplicates Plaintiff's § 1983 claim against Alice. *See* (D.E. 19, p. 11–12). A suit against a local government official in his official capacity is no different from a suit against the local governmental entity itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Under "Count 1" of the complaint, Plaintiff attempts to hold Chief Perez liable for violations of Plaintiff's Fourth and Fourteenth Amendment rights in his individual and official capacity. *See* (D.E. 1, p. 30–31). Alice is a named Defendant in this matter. Under "Count 2" of the complaint, Plaintiff attempts to hold Alice liable for violating his Fourth and Fourteenth Amendments for the same incident—the unreasonable arrest, unreasonable search of his apartment, and unreasonable seizure of his personal property. *Id.* at 34–35. Having already disposed of the § 1983 conspiracy claim as to Chief Perez, the remaining

§ 1983 claims against Chief Perez in his official capacity and Alice are now duplicative. Dismissal of a claim against the local government official in his official capacity is appropriate when the "allegations duplicate claims against the respective governmental entit[y] [itself]." *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001). As such, Plaintiff's § 1983 claim for violating Plaintiff's Fourth and Fourteenth Amendment rights against Chief Perez in his official capacity are dismissed.

### C. Plaintiff's section 1983 claims against Chief Perez in his individual capacity and Alice for violating Plaintiff's Fourth and Fourteenth constitutional rights.

Chief Perez and Alice move for the dismissal of Plaintiff's § 1983 claims based on his arrest and search of his apartment because neither Chief Perez, nor the Alice police officers who arrested Plaintiff and subsequently searched his apartment violated Plaintiff's Fourth and Fourteenth Amendment rights to be free from unreasonable arrests and unreasonable searches. (D.E. 19, p. 2; *see* D.E. 1, p. 30–35). The Court will analyze each defendant's liability in turn.

As a preliminary matter, the Court can consider the probable cause affidavit for the arrest warrant, the arrest warrant, and the probable cause affidavit for the search warrant attached to Chief Perez and Alice's motion to dismiss without converting it into a motion for summary judgment because the documents are matters of public record. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (explaining that "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

*i. Chief Perez's involvement and liability.*

At approximately 7:06 p.m. on June 10, 2019, Chief Roush, Lieutenant Thurmond,

and four Alice Police SWAT Team officers knocked on Plaintiff's apartment door. (D.E. 1, p. 16). Plaintiff "opened his door and the SWAT Team rushed toward him." *Id.* Once inside Plaintiff's apartment, the Alice SWAT Team officers "ordered [Plaintiff] to put down his cell phone and place his hands behind his back" and handcuffed him. *Id.* After Plaintiff was handcuffed, Ms. Robinson, who Plaintiff called just before the officers entered his apartment, asked the Alice SWAT Team officers about the "search warrant" they possessed. *Id.* The Alice SWAT Team officers "replied that they had not read it until just then because they had been directed by their Police Chief Aniceto "Cheto" Perez to serve the warrant for Mathis Police Chief Roush when they were first starting their shift." *Id.* at 17. At some point during this ordeal, the Alice SWAT Team officers searched the apartment. *Id.* The Alice SWAT Team officers later placed Plaintiff in a patrol vehicle. *Id.* at 18. An arrest warrant for Plaintiff existed at the time of the arrest, but none of the officers had the warrant with them at the apartment.

Liability for a constitutional violation under § 1983 only attaches when the defendant violated the constitution through their own individual actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Regarding the allegedly unlawful arrest, Chief Perez cannot be held liable. Chief Perez (and his subordinates) had a duty to "execute all lawful process issued to the officer by any magistrate or court." TEX. CODE CRIM. PROC. art. 2.13(b)(2). As per his duty, Chief Perez directed his officers to execute the arrest warrant Judge Daniel Garza issued. *See* (D.E. 1, p. 17; D.E. 19-2). That the Alice SWAT Team officers did not possess the arrest warrant at the time of arrest does not make the arrest unreasonable and there are no allegations stating the Alice police officers, Chief Roush, or

Lieutenant Thurmond did not make their authority to arrest Plaintiff known. *See* TEX. CODE CRIM. PROC. art. 15.26; *see* FED. R. CRIM. P. 4(c)(3)(a); *see Payton v. New York*, 445 U.S. 573, 603 (1980) ("Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."). Because there are no allegations to suggest Chief Perez had any other involvement besides executing the facially valid arrest warrant, Chief Perez cannot be held liable.

As for the search, however, Plaintiff pleads sufficient facts to show Chief Perez could plausibly be liable. Taking Plaintiff's allegations as true, no search warrant existed. Warrantless searches in the home are unreasonable unless a recognized exception applies. *Payton*, 445 U.S. at 590 (1980) ("In terms that apply equally to seizures of property and seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."). Here, Plaintiff alleges he did not consent to the search of his apartment and pleads factual allegations that show no exigent circumstances existed. *See* (D.E. 1, p. 16). Chief Perez directed his subordinates to execute a "search warrant" and was present at Plaintiff's apartment complex. (D.E. 1, p. 17–18). Chief Perez never left his police vehicle, but because he directed his subordinates to search Plaintiff's apartment and was present at the scene of the arrest and search, there is a sufficient causal connection between Chief Perez's individual actions and Plaintiff's constitutional injury to make him plausibly liable for the injury. *See Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) ("Section 1983 does not create supervisory or *respondeat superior* liability. Rather, a plaintiff must show either

[that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation." (internal quotations omitted & citations omitted)); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("a supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."). Chief Perez's subordinates would not have entered Plaintiff's residence and searched but for Chief Perez's own commanding order on the subject. Whether Chief Perez was justified in ordering his officers to search Plaintiff's apartment based on the information Mathis Police Department supplied him remains an open question, such that qualified immunity might attach, but here, based purely on the allegations in the complaint, there is enough to state a claim for § 1983 against Chief Perez in this individual capacity for the allegedly warrantless *search* of Plaintiff's residence without any recognized exceptions to the warrant requirement.

  *ii. Alice's liability.*

Alice argues that Plaintiff's § 1983 claim against it for violating his Fourth Amendment rights fails because the four Alice SWAT Team officers, who conducted the search, and Chief Perez who directed the officers to do so, did not execute an unreasonable arrest or search. Regarding the *arrest*, Alice is correct. As stated above, there was a facially valid warrant and each Alice SWAT Team officer had the duty to execute it. Regarding the *search*, however, the four Alice SWAT Team officers and Chief Perez did plausibly violate Plaintiff's Fourth Amendment rights by searching his apartment without a warrant and in

the absence of any recognized exceptions to the warrant requirement. Alice is correct in arguing that it cannot be held liable *respondeat superior* for its officers' actions, but it certainly could under the *Monell* municipal liability, an issue not raised in this motion to dismiss. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–695 (1978).

## IV. Conclusion

For the aforementioned reasons, Defendants Chief Perez and Alice's Motion to Dismiss (D.E. 19) is **GRANTED in part and DENIED in part**. As such, the Court **ORDERS** the following:

1. Plaintiff's § 1983 conspiracy claim as to Defendant Chief Perez in his individual and official capacity is **DISMISSED with prejudice**.
2. Plaintiff's § 1983 claim against Defendant Chief Perez in his official capacity for violation of Plaintiff's Fourth and Fourteenth Amendment rights against unreasonable searches and seizures is **DISMISSED with prejudice as duplicative**.
3. Plaintiff's § 1983 claims against Defendants Chief Perez in his individual capacity and Alice for violation of Plaintiff's Fourth and Fourteenth Amendment right against *unreasonable seizures* in connection with his *arrest* is **DISMISSED with prejudice**.
4. Plaintiff's § 1983 claims against Defendants Chief Perez in his individual capacity and Alice for violation of Plaintiff's Fourth and Fourteenth Amendment right against *unreasonable searches* in connection with the *search* of Plaintiff's apartment survives.

SO ORDERED.

_____
DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Dated: Corpus Christi, Texas
May 24, 2021